■ Lee H. Kimmell et al., Respondents-Appellants, v Herman A. Schaefer, Appellant-Respondent et al., Defendants. [637 NYS2d 147] —Judgment, Supreme Court, New York County (Edward Greenfield, J.), entered January 25, 1995, in favor of plaintiff Kimmell in the amount of $497,902.05 and plaintiff Katzenbach in the amount of $499,030.14, plus interest, costs and disbursements, unanimously affirmed, without costs.

This action arises out of plaintiffs' purchase of an investment from Cogenic Energy Services, Inc., a now defunct, publicly traded company that was engaged in the development, manufacture, sale and maintenance of small-scale, self-contained electrical generation processes that have heat recovery capability and were intended to produce savings in energy costs. In late 1987 and early 1988, defendant-appellant, the chairman of the board and the chief financial officer of Cogenic, approached plaintiffs and offered to sell them one of its cogeneration installations in the San Diego, California area. According to the detailed forecasts provided by defendant, the subject project was already achieving a sizable monthly cash flow that would only increase over the next ten years. He met separately with plaintiffs, enthusiastically vouching for the accuracy of the projections, and then followed up his oral assertions with even more optimistic prognostications, thereby succeeding in convincing each of the plaintiffs to acquire 50% of the installation.

The project, however, was worthless from the start and never even attained the first month's projections. Indeed, defendant's representations, which he conceded at trial were made with the expectation that they would be relied upon by plaintiffs, were not only wrong and deceptive but contained glaring omissions. Significantly, defendant had failed to disclose that the California Public Utility Commission had already approved electric and natural gas rate reductions, as well as sweeping rate design alterations, which changes were completely destructive of the financial viability of cogeneration installations. The defense witnesses, moreover, did not deny that plaintiffs should have been advised of the rate adjustments, and it was clear that plaintiffs would never have made their investment had they been informed of the utility's action.

Rejecting the defense contention that the corporate executives were unaware of the rate rollbacks, the court, sitting as the finder of the facts, rendered a decision in favor of plaintiffs on their claim of negligent misrepresentation. Specifically, the court determined that all of the elements of negligent misrepresentation had been satisfied, including falsity at the time the

misrepresentations were made and justifiable reliance by plaintiffs. However, the court also concluded that plaintiffs had not proven, by a fair preponderance of the evidence, that the individual defendant himself actually knew that the rate changes had made the project totally nonviable, and dismissed the causes of action for fraud.

Negligent misrepresentation occurs when there is (1) an awareness by the maker of an untrue statement that it is to be used for a particular purpose, (2) reliance by a known party on that statement in furtherance of that purpose, and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance (*Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 384). While it is true that recovery cannot be had for pecuniary loss resulting from the negligent misrepresentations of someone not in privity of contract with the claimant "or a relationship so close as to approach that of privity" (*supra*, at 382), that is not the situation herein. Defendant, who personally met with plaintiffs, was a director and officer of a company that made a sale to plaintiffs pursuant to a written contract and was in actual privity with plaintiffs.

Defendant also contends that he cannot be held responsible for the mere delivery of an opinion, which is how he describes the nature of his representations. However, even expressions of opinion and/or predictions of future events are actionable if deemed to be statements of material facts (*see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra*, at 379; *CPC Intl. v McKesson Corp.*, 70 NY2d 268, 286). As this Court observed in *West Side Fed. Sav. & Loan Assn. v Hirschfeld* (101 AD2d 380, 385, *lv denied* 65 NY2d 605) " 'Mere predictions, however, may not form the basis for an action for fraud when both parties have equal access to the facts, or when it is obvious that the declarant is using a subjective standard. In these situations, reliance on the opinions is deemed unreasonable. However, where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement.' " (Quoting *Magnaleasing, Inc. v Staten Is. Mall*, 428 F Supp 1039, 1042-1043, *affd* 563 F2d 567.) Defendant not only had superior information to that possessed by plaintiffs but he cannot reasonably claim that he did nothing more than advance a guess on which he never expected plaintiffs to act.

The court's determination of the facts in plaintiffs' favor on the cause of action for negligent misrepresentation was amply

supported by the evidence at trial (*see, Thoreson v Penthouse Intl.*, 80 NY2d 490, 495), as was its finding that plaintiffs had not proven that defendant had actual knowledge of the rate changes, and thus the scienter necessary to support a cause of action for fraud (*see, Vermeer Owners v Guterman*, 78 NY2d 1114, 1116).

We have considered the parties' remaining arguments for affirmative relief and find them to be without merit. Concur—Rosenberger, J. P., Ellerin, Nardelli, Williams and Tom, JJ.