CHAMPION HOME BUILDERS
CO., Plaintiff

v.

ADT SECURITY SERVICES, INC.,
ADT Security Systems, Inc., and ADT
Security Systems, Northeast, Inc., De-
fendants.

No. 00–CV–0287.

United States District Court,
N.D. New York.

Dec. 26, 2001.

As Amended Jan. 25, 2002.

Hester, Saunders, Kahler, Manion & Locke LLP, Utica, NY (Merritt S. Locke, Raymond A. Meier, of counsel), Butrus, Khoshbin, Wilson & Vogt LLP, Dallas, TX (Shain A. Khoshbin, of counsel), for plaintiffs.

Kelley Drye & Warren LLP, New York, NY (James V. O'Gara, of counsel), Eastwood, Scandariato & Steinberg, North Bergen, NJ (Eric T. Steinberg, of counsel), for defendants and proposed third party plaintiffs.

Thuillez, Ford, Gold & Johnson, Albany, NY (Richard A. Kohn, of counsel), for Proposed Third–Party Defendant Lumbermen's Underwriting Alliance.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On January 7, 2000, plaintiff Champion Home Builders Co. ("Champion" or "plaintiff") commenced the instant action against defendants ADT Security Services, Inc., ADT Security Systems, Inc., and ADT Security Systems, Northeast, Inc., (collectively, "ADT" or "defendants") in Supreme Court for the State of New York, Oneida County, alleging six state law causes of action. On February 15, 2000, ADT removed the action to this court on the basis of diversity, pursuant to 28 U.S.C. § 1441, *et seq.* ADT answered the complaint on February 25, 2000.

On February 16, 2001, Champion filed an amended complaint which asserted eight causes of action against ADT. Also on that date, ADT moved the magistrate judge for leave to file a third-party complaint against Lumberman's Underwriting Alliance ("LUA"). On February 23, 2001, ADT moved to dismiss all but one of Champion's causes of action in the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 11, 2001, ADT's motion to implead LUA was denied. Defendants appeal this denial. Plaintiff opposes the motion and both

plaintiff and LUA oppose the appeal. Oral argument was heard on July 6, 2001, in Utica, New York. Decision was reserved.

## II. *FACTS*

This action arises out of a fire at plaintiff's manufacturing facility in Sangerfield, New York (the "Sangerfield plant"). The following are the facts as stated in the light most favorable to the nonmoving plaintiff.

ADT is a Delaware corporation authorized to install burglar and fire alarm systems in New York. Champion is a Michigan corporation engaged in the business of manufacturing pre-fabricated and mobile homes in New York. In February 1993, ADT and Champion entered into an agreement (the "1993 Agreement") whereby ADT agreed to install burglar and fire alarm equipment at the Sangerfield plant. The contract also called for ADT to provide inspection, monitoring, and notification service to Champion for the alarm system at the Sangerfield plant. In December of 1998, the parties entered into a new agreement which reduced the number of inspections which ADT was required to make annually, but was otherwise the same as the February 1993 agreement (the "1998 Agreement").[1]

The Agreement contained a broad and conspicuous disclaimer of liability by ADT. This disclaimer provided, in pertinent part, that

> IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000,

---

1. Because the material provisions of both the 1993 Agreement and the 1998 Agreement are identical, they will be referred to collectively as "the Agreement" for purposes of conciseness. All references to "the Agreement" will be to the document attached as Exhibit E to the Affidavit of James V. O'Gara.

WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, OF ADT, ITS AGENTS OR EMPLOYEES.

The Agreement provided further that if Champion desired ADT to assume greater liability under the contract, that such agreement would be set forth in a rider attached to the form contract stating the amount of additional liability and the additional amounts paid for the imposition of such additional liability. No such rider was ever executed.

The Agreement also provided for a ninety-day warranty limited to the repair or replacement of defective parts. The Agreement further provided that

THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY, AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE.

Under the terms of the Agreement, ADT was required to comply with standards promulgated by the National Fire Protection Association ("NFPA") relating to the design of alarm systems. In addition, Champion's insurer, LUA, required compliance with state and local codes, as well as with its own guidelines, as a condition of insuring the Sangerfield plant. ADT's design of the alarm system was reviewed and approved by LUA, and the insurer did provide insurance coverage for the Sangerfield plant.

On January 19, 1999, the Sangerfield plant was destroyed by fire. This action against ADT followed. Champion alleges that the alarm system failed to detect the fire before it became unmanageable because (1) the system did not comply with NFPA standards and other codes, including a set of guidelines promulgated by Champion's insurer LUA known as "Bulletin 250"; and (2) ADT failed to properly inspect and test the alarm system and its components.

ADT sought to implead LUA on the grounds that LUA was a "designer" of the alarm system at the Sangerfield plant based upon LUA's insistence that ADT adhere to its underwriting standards and to certain national standards. The magistrate judge concluded that LUA had done nothing more than act to safeguard its own interests as the insurer of the Sangerfield plant, and denied impleader.

### III. *DISCUSSION*

Each of ADT's motions involve different legal standards and issues. Accordingly, each will be discussed in turn below.

## A. 12(b)(6) Motion to Dismiss

### 1. Standard of Review

■ In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene,* 743 F.Supp. 273, 276 (S.D.N.Y. 1990); *Albert v. Carovano,* 851 F.2d 561, 572 (2d Cir.1988).

### 2. Arguments of the Parties

ADT moves to dismiss the Second (Negligent Misrepresentation), Third (Negligence), Fifth (Breach of Warranty), Sixth (Deceptive Trade Practices), Seventh (Products Liability), and Eighth (Breach of Contract) causes of action of the Amended Complaint on the grounds that they are barred by the exculpatory and limitation of liability clauses of the contract between it and Champion. ADT also moves to dismiss the First (Fraud and Fraudulent Inducement), Second (Negligent Misrepresentation), and Sixth (Deceptive Trade Practices) causes of action on the grounds that they are based on the alleged breach of contractual relations, and therefore, do not state an independent claim for relief. ADT also asserts that these causes of action are not pleaded with sufficient particularity. In addition, ADT seeks dismissal of the Fifth (Breach of Warranty) cause of action on the grounds that it is barred by the 90–day warranty limitation in the contract, and also by the four-year statute of limitations applicable to such claims under New York law.

■ Champion opposes on the grounds that (1) ADT's motion is procedurally defective because it improperly relies upon materials outside the pleadings (i.e., the contract between ADT and Champion);[2] (2) ADT's form contract is void and its limitations and exclusions cannot be relied upon by ADT; (3) Champion's misrepresentation claims are not contract claims; (4) the merger clause in the contract does not bar a claim that ADT deceived Champion into entering into the contract; and (5) because the contract was predominately one for services, the six-year statute of limitations applies to Champion's warranty claims. In addition, Champion asserts that the exclusions and limitations contained in the contract are unenforceable because of ADT's position of trust and confidence with Champion.[3]

---

**2.** Although Champion argues that the Agreement should not be considered on this motion, it repeatedly refers to its terms throughout the amended complaint, and in fact, pleads the eighth cause of action for breach of its terms. As such, it is clear that Champion relied on the contract in framing the complaint, and it is properly considered on this motion. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991). Accordingly, Champion's motion to strike the O'Gara affidavit is denied insofar as it seeks to preclude consideration of the Agreement on this motion.

**3.** Although Champion repeatedly refers to the relationship of trust which it enjoyed with ADT as a basis to avoid the terms of the Agreement, such an argument lacks merit where, as here, the contract was procured through the arms-length dealings of sophisticated business entities. This is particularly true where, as here, the alleged misrepresentations were concurrently reviewed and approved by an independent third party, LUA. Accordingly, Champion's arguments based on

None of these arguments provides a basis to avoid the application of the exclusions and limitations contained in the agreement.

### 3. *Validity of the Exculpatory Clause*

■ Champion's primary argument against dismissal of its cause of action is addressed to the validity of the Agreement's exculpatory clause. Champion alleges that the Agreement is invalid because it was procured through the fraud of ADT. However, the amended complaint wholly fails to plead the existence of any actionable fraud. The crux of plaintiff's complaint is that ADT did not provide the system which it agreed to install—i.e., a system that complied with NFPA standards, state and/or local codes, Bulletin 250 and/or industry standards. In addition, the amended complaint alleges that ADT did not properly inspect, test and maintain the system. Champion's claim is that these failures resulted in the destruction of the Sangerfield plant. Though Champion describes the contractual promises made by ADT as "representations" and terms the failure to fulfil them as "fraud" in the amended complaint, the claims in Champion's amended complaint are clearly claims for breach of contractual obligations.

As evidence of ADT's "fraud," Champion alleges that the system as installed by ADT failed to comply with its representations concerning the performance of the alarm system because (1) the design and installation concerning the number, placement and/or spacing of heat detectors was deficient; (2) the alarm system did not have detection devices in enclosed areas of the protected structure; (3) ADT did not properly perform inspections and testing of system components; (4) ADT did not properly document or correct deficien-

cies concerning the alarm system; (5) the system did not have smoke detectors to protect the alarm control/communication system; (6) the alarm control panel was connected to a generic output that failed to distinguish the location and type of alarm triggered; (7) ADT failed to timely and properly report the fire; and (8) ADT did not comply with its representations concerning the quality of its work as an "industry leader."

Other than this statement concerning its status as an "industry leader"—which is far too ambiguous to support a claim for fraud—all of the representations alleged by Champion were statements of future intent, not present fact. Moreover, to the extent that Champion has alleged noncompliance with certain "representations" by ADT concerning its performance under the contract, Champion has wholly failed to demonstrate how such statements and subsequent nonperformance or misperformance of contractual obligations can support the conclusion that the Agreement was procured through fraud on the part of ADT. As such, these allegations are insufficient as a matter of law for Champion to avoid the exculpatory effects of the Agreement.

■ Moreover, it is beyond dispute that exculpatory clauses and limitations on liability such as those at issue here are valid and enforceable under New York law. Courts within New York have repeatedly enforced exculpatory clauses in contracts involving alarm companies. *See, e.g., Federal Insurance Co. v. Honeywell Inc.,* 243 A.D.2d 605, 606, 663 N.Y.S.2d 247 (2d Dep't, 1997); *Fireman's Fund Ins. Co. v. ADT Security Systems, Inc.,* 847 F.Supp. 291, 292–93 (E.D.N.Y.1994). These decisions reflect a public policy within New York which recognizes that alarm compa-

the existence of such a relationship are reject- ed.

nies perform a significant public service, and that the enforcement of exculpatory clauses allow the companies to provide affordable systems and services to their customers. *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 544, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 227, 557 N.Y.S.2d 286, 556 N.E.2d 1093 (1990). If alarm companies were unable to contract out of liability such as that sought to be imposed here, they simply could not provide such service. *See Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir.1993) (price paid to alarm company does not "include a sum designed to anticipate the possible need to pay the purchaser the value of the property that the system is designed to protect").

■■■ Courts only refuse to enforce such exculpatory clauses where, as alleged in Champion's fourth (Gross Negligence) cause of action, a party attempts to contractually absolve itself of its own gross negligence. Under New York law, a party may not waive liability for its own grossly negligent behavior. *See Sommer*, 79 N.Y.2d at 553–54, 583 N.Y.S.2d 957, 593 N.E.2d 1365.[4] Absent such a showing, however, a contract containing a clause such as that at issue in this case will be enforced. *See Fireman's Fund*, 847 F.Supp. at 296.

In addition to its arguments based on the alleged invalidity of the exculpatory clause, Champion has made various arguments addressed to particular causes of action. Though it is held that the exculpatory clause is broad enough to bar each of the plaintiff's causes of action (excepting, the fourth cause of action for gross negligence and the eight causes of action for

breach of contract), plaintiff's additional arguments will be addressed in turn below.

### 4. First and Second Causes of Action—Fraud and Fraudulent Inducement and Negligent Misrepresentation

Champion argues that its first and second causes of action are outside the scope of the Agreement and, therefore, not subject to the limitations on liability contained therein. Even assuming this to be the case, they must still be dismissed. As noted above, Champion has failed to plead facts that would support such causes of action.

■■■ The elements of a cause of action for fraud or fraudulent inducement in New York are (1) a representation of present material fact, (2) falsity, (3) scienter, (4) reliance, and (5) injury. *Brenner v. American Cyanamid Co.*, 732 N.Y.S.2d 799 (4th Dep't.2001). While a party may assert a cause of action based upon its claim that it was fraudulently induced to enter into a contract, "the misrepresentations alleged in the pleadings must be more than merely promissory statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, intent not to perform them." *Laing Logging v. International Paper Co.*, 228 A.D.2d 843, 844, 644 N.Y.S.2d 91 (3d Dep't, 1996)(internal quotation omitted).

■■■ It is clear that plaintiff's allegations are not sufficient to state a cause of action for fraud. The amended complaint does not plead that ADT misrepresented any present material fact to Champion.[5]

---

**4.** In this case, ADT has not moved to dismiss Champion's fourth cause of action (gross negligence). However, Champion's third cause of action (negligence) is within the scope of the exculpatory clause, and as noted below, it will be dismissed on that basis.

**5.** The only present "fact" alleged was the fact that ADT was an "industry leader" in the

Similarly, the amended complaint fails to identify which contractual promises ADT made with the present intent not to perform them. The complaint alleges that the system as designed and installed was deficient, but does not allege that ADT misled Champion about any present fact concerning the design or installation. There is no allegation that ADT installed a different system than the one it agreed to install, or that ADT intentionally misrepresented its willingness or ability to perform under the terms of the Agreement. Instead, Champion's allegation is that the system as installed failed to detect the fire at the Sangerfield plant before it became unmanageable. Whether or not these allegations are sufficient to state a cause of action for breach of contract, it is clear that they do not constitute fraud under the law of New York.

Champion's allegations concerning the second (Negligent Misrepresentation) cause of action are the same as those that concern the first (Fraud and Fraudulent Inducement) cause of action. The elements of a cause of action for negligent misrepresentation under New York law are: (1) an awareness by the maker of an untrue statement that it is to be used for a particular purpose; (2) reliance by a known party on that statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance. *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 384, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992). Fal-

sity at the time the alleged statement was made is an essential element of such a claim. *Kimmell v. Schaefer*, 224 A.D.2d 217, 217–18, 637 N.Y.S.2d 147 (1st Dep't, 1996).

As noted above, with the exception of ADT's representation that it was an "industry leader," all of the statements alleged concern present statements of future intent. While the failure to fulfill such promises may give rise to an action for breach of contract, they simply cannot as a matter of law sustain a cause of action for negligent misrepresentation. As such, Champion has failed to plead an essential element of its second cause of action.

In addition, Champion cannot establish that it was injured by any alleged misrepresentation by ADT concerning the ability of the system to prevent catastrophic fires. The Agreement clearly states that "ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT." Any assertion that Champion was injured by its belief that the system would prevent the destruction of the Sangerfield plant must, therefore, be dismissed. To the extent that Champion argues that ADT made contrary prior or contemporaneous representations, they are barred by the merger clause contained in the Agreement.[6]

---

alarm service industry, which, as previously stated, is far too ambiguous and subjective a statement to support a cause of action for fraud.

**6.** Paragraph N of the Agreement provides that:

THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT. IN EXECUTING THIS AGREEMENT, CUSTOMER IS NOT RELYING ON ANY ADVICE OR ADVERTISEMENT OF ADT. CUSTOMER AGREES THAT ANY REPRESENTATION,

### 5. *Third Cause of Action—Negligence*

Champion's third cause of action must be dismissed as it is within the scope of the exculpatory clause. The Agreement provides that "ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY, AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE." Champion has no basis, other than its challenge to the validity of the exculpatory clause, to avoid dismissal of this cause of action. Because it is held that the exculpatory clause is valid and enforceable, the third (Negligence) cause of action must be dismissed.

### 6. *Fifth Cause of Action—Breach of Warranty*

■ With regard to the fifth cause of action, ADT argues that it must be dismissed because it was not commenced within either the 90–day limitation provided in the Agreement or the four-year statute of limitations under the UCC. In addition, ADT argues that Champion's claims are barred by the warranty disclaimer con-

PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN THIS AGREEMENT SHALL NOT BE BINDING ON ANY PARTY, AND THAT THE TERMS AND CONDITIONS HEREOF APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, EXCEPT AS SPECIFICALLY MODIFIED IN WRITING. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL GOVERN NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS OR ANY PURCHASE ORDER OR OTHER DOCUMENT SUBMITTED BY THE CUSTOMER.

tained in the Agreement. The language of the Agreement is specific and provides that

THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE.

■ Champion argues that this disclaimer is invalid under the Magnuson–Moss Warranty Act;[7] however, even accepting this conclusion, it follows that Champion's warranty claim must be dismissed as untimely. Champion's warranty claim is brought under the Uniform Commercial Code, which imposes a four-year statute of limitations running from the date of the sale of the warranted goods. In this case, the sale of the alarm system occurred in February 1993, and plaintiff was required to commence its warranty claim by February 1997. As such, Cham-

There is no allegation or evidence that the Agreement was ever modified in writing or otherwise.

7. ADT argues that this transaction was outside the scope of the Magnuson–Moss Act because the alarm system did not constitute a "consumer product" within the meaning of the Act. Because the act defines a "consumer product" as goods which are "normally used for personal, family, or household purposes," 15 U.S.C. § 2301(1), it appears as though ADT is correct that an industrial alarm system is outside the statutory definition.

pion's fifth (Breach of Warranty) cause of action must be dismissed.[8]

### 7. *Sixth Cause of Action—Deceptive Trade Practices*

With regard to Champion's sixth cause of action, New York State General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." The essential elements of a violation of Section 349 are (1) proof that a "consumer-oriented" practice was deceptive or misleading in a material respect, and (2) proof that plaintiffs were injured thereby. *See Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 48, 700 N.Y.S.2d 184 (2d Dep't, 1999); *Berrios v. Sprint Corp.*, 1998 WL 199842 (E.D.N.Y.1998); *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590 (N.Y.Sup.Ct.1987). The standard for whether a practice is misleading is objective, requiring a showing that the "reasonable consumer would have been misled by the defendant's conduct." *Berrios*, 1998 WL 199842 at *3 (quoting *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996)).

Section 349 has been applied in a variety of different contexts. The types of trade practices which courts have found to be deceptive include: (1) false advertising; (2) pyramid schemes; (3) deceptive pre-ticketing; (4) misrepresentation of the origin, nature or quality of the product; (5) false testimonials; (6) deceptive collection efforts against debtors; (7) deceptive practices of insurance companies; and (8) "bait and switch" sales tactics. *See Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146, 630 N.Y.S.2d 769 (2d Dep't, 1995) (collecting cases). However, the concern in Section 349 cases is with practices that have a broad impact on consumers at large. *See Teller*, 213 A.D.2d at 145, 630 N.Y.S.2d 769 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). Under New York law, private contract disputes, unique to the parties, do not fall within the prohibitions of Section 349. *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F.Supp. 190, 201 (E.D.N.Y.1997).

Champion's allegations with regard to this cause of action are the same as those for the previously discussed causes of action. The sixth (Deceptive Trade Practices) cause of action does not allege any additional facts to demonstrate that ADT had a general, consumer oriented practice that was deceptive to consumers. Instead, Champion simply alleges that ADT did not provide the system and service it agreed to provide. As noted above, these allegations are insufficient to differentiate the instant case from any other contract dispute. As such, it is held that Champion has failed to plead a cause of action under Section 349.

### 8. *Seventh Cause of Action—Products Liability*

Champion's seventh cause of action alleges that the alarm system designed by ADT was an inherently dangerous product because "the system was so defectively

---

8. Champion argues that the UCC warranty limitation does not apply because the Agreement was one for services. This argument has two fatal flaws. First, the cause of action is brought pursuant to the UCC, which applies to the sale of goods. Second, New York does not recognize a cause of action for breach of warranty for services. *See City of New York v. Black & Veatch*, No.95 Civ. 1299, 1997 WL 624985, *5 (S.D.N.Y., Oct. 6, 1997)(quoting *Verra v. Koluksuz*, 74 A.D.2d 932, 932–33, 426 N.Y.S.2d 151 (3d Dep't, 1980)).

designed that when produced, installed and/or periodically inspected or maintained, it could not perform the functions and services contemplated by Champion, and was inherently dangerous." (Amended Complaint ¶ 74.) ADT moves to dismiss this cause of action on the ground that it is barred by the exculpatory clause in the Agreement, and also because Champion has failed to allege that the alarm system caused the fire at the Sangerfield plant.

Champion asserts, without support, that the products liability claim is not subject to waiver as a matter of New York law. Champion also opposes on the ground that under the law of New York, a defectively designed alarm system can constitute an inherently dangerous product. Champion cites *LaBarre v. Mitchell*, 256 A.D.2d 850, 681 N.Y.S.2d 653 (3d Dep't, 1998), in support of this argument. In *LaBarre*, the Third Department held that "a defectively designed alarm system ... may be considered an inherently dangerous product." *Id.* at 852, 681 N.Y.S.2d 653. This is so because "the failure of a fire alarm system to perform its intended function 'carefully and competently can have catastrophic consequences' and a design creating an unreasonable risk of failure in such a system would render it dangerous and defective." *Id.* (quoting *Sommer*, 79 N.Y.2d at 553, 583 N.Y.S.2d 957, 593 N.E.2d 1365).

█ It is not necessary to decide whether or not an alarm system that fails to detect a fire in the manner alleged here constitutes an inherently dangerous product because it is held that Champion's seventh (Products Liability) cause of ac-

tion is barred by the exculpatory clause's waiver of liability for "any consequential or incidental damages of any nature, including without limitation, damages for personal injury or damages to property, and however occasioned, whether alleged as resulting from breach of warranty or contract by ADT or negligence of ADT or otherwise." Because this language is broad enough to encompass claims such as those alleged in the seventh (Inherently Dangerous Product) cause of action, it is held that this claim must also be dismissed.

### 9. *Eighth Cause of Action—Breach of Contract*

█ Champion's final cause of action is for breach of contract. As suggested above, Champion's allegations are sufficient to support such a cause of action. Champion does allege that ADT breached numerous obligations contained in the Agreement. However, its ability to recover for damages pursuant to this cause of action is subject to significant limitations—namely the waiver of liability for "loss, damage or injury due directly or indirectly to occurrences, or consequences therefrom, which the service or system is designed to detect or avert" and the waiver of liability for consequential damages.[9] In other words, Champion's possible damages under this cause of action are limited to recovering economic damages based upon ADT's failure to provide the system and service which it agreed to provide, and not for consequential injuries resulting from the fire which destroyed the Sangerfield plant.[10]

9. The Agreement provides that "ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY".

This provision limits Champion's recovery for ADT's alleged breach to recovering its own cost of performance under the Agreement.

10. For example, if successful, Champion would be permitted to recover amounts paid

## B. *Appeal of Magistrate Judge's Decision*

 The decision of a magistrate judge may only be reversed on appeal "where it has been shown that the magistrate's order is 'clearly erroneous' or contrary to law." 28 U.S.C. § 636(b)(1)(A). A magistrate's order is clearly erroneous where, "although there is some evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction a mistake has been made." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

 ADT's appeal of the denial of its motion to implead LUA must be rejected. ADT's theory is that LUA "designed" the alarm system at the Sangerfield plant by requiring compliance with certain standards and regulations. Champion and LUA both oppose on the grounds that LUA did nothing more than safeguard its own interests as the insurer of the Sangerfield plant. The magistrate judge agreed. Specifically, Magistrate Judge Gustave J. DiBianco held that

> To introduce Lumbermen's into this case would cause complication of the issues because plaintiff does not claim that Lumbermen's Bulletin 250 was insufficient, rather, plaintiff claims that ADT failed to meet the standards articulated in the Bulletin, along with other national standards for alarm systems. ADT seems to claim that because Lumbermen's issued standards for compliance that this somehow makes Lumbermen's a "designer" of the alarm system. This court finds that to introduce these issues would unnecessarily complicate the action with claims of dubious merit, given New York law.

for service and inspections which it did not receive, and for the difference in actual value

This decision was neither clearly erroneous nor contrary to law.

As a threshold matter, ADT's allegation that LUA was a designer of the alarm system is without merit. LUA's involvement in this case was that of an insurer. ADT has identified no credible basis to conclude that LUA's actions in this case were anything other than the actions of an insurer seeking to protect its own interests.

 Under New York law, an insurer does not incur liability for undertaking an inspection for its own underwriting purposes. *See Jansen v. Fidelity and Casualty Co.*, 79 N.Y.2d 867, 868–69, 581 N.Y.S.2d 156, 589 N.E.2d 379 (1992). In this case, there is ample support for the magistrate judge's conclusion that LUA inspection and approval of the alarm system was for its own benefit, and not for the benefit of Champion. In such circumstances, LUA owes no legally enforceable duty of care to Champion. *Id.* Absent a duty of care owed from LUA to Champion, the magistrate judge correctly denied ADT's motion to implead LUA.

## IV. *CONCLUSION*

As set forth above, the defendants are entitled to summary judgment dismissing most of plaintiffs' claims. The defendants are not entitled to implead the proposed third-party defendant. Therefore, it is

ORDERED that

1. Defendants ADT Security Services, Inc., ADT Security Systems, Inc., and ADT Security Systems, Northeast, Inc.'s, motion to dismiss the amended complaint is GRANTED in part and DENIED in part as set forth below:

between the alarm system as promised and the system as installed.

a. Defendants' motion is GRANTED with regard to plaintiff Champion Home Builders Co.'s first (Fraud and Fraudulent Inducement) cause of action, second (Negligent Misrepresentation) cause of action, third (Negligence) cause of action, fifth (Breach of Warranty) cause of action, sixth (Deceptive Trade Practices) cause of action, and seventh (Products Liability) cause of action and these causes of action are DISMISSED;

b. Defendants' motion is DENIED with regard to plaintiff's eighth (Breach of Contract) cause of action;

2. The magistrate judge's denial of defendants' motion to implead Lumbermen's Underwriting Alliance is AFFIRMED; and

3. The defendants shall file and serve an answer to the fourth (Gross Negligence) cause of action and eighth (Breach of Contract) cause of action in the amended complaint on or before January 11, 2002.

IT IS SO ORDERED.