Bruce DUNGAN, et al., Plaintiffs,

v.

THE ACADEMY AT IVY RIDGE,
et al., Defendants.

No. 06–CV–0908.

United States District Court,
N.D. New York.

May 14, 2008.

Eric C. Nordby, Esq., Zachary M. Mattison, Esq., Hancock & Estabrook, LLP, of counsel, Syracuse, NY, for Plaintiffs.

Edward G. Melvin, Esq., Maureen G. Fatcheric, Esq., Costello, Cooney & Fearon, PLLC, of counsel, Syracuse, NY, for Defendants The Academy at Ivy Ridge, Academy at Ivy Ridge, Inc., Academy at Ivy Ridge, LLC, Jason G. Finlinson Corp., Joseph & Alyn Mitchell Corp., Northwest Association of Schools & Colleges & Universities, Inc., Northwest Association of Accredited Schools, Inc., World Wide Assoc. of Speciality Programs and Schools. Inc., Premier Educational Systems, LLC, Jason G. Finlonson, Joseph Mitchell, Alyn Mitchell, Teen Help, LLC, Teen in Crisis, Inc., Teen in Crisis, LLC, Lifelines Family Services, Inc. d/b/a Teen Life Lines, Teen Solutions, LLC.

Daniel R. Ryan, Esq., Smith, Sovik, Kendrick and Sugnet, PC, of counsel, Syracuse, NY, for Defendants Robert B. Lichfield, Patricia Lichfield, Robert Browning Lichfield Family Limited Partnership, R & B Billing, LLC, Optimum Billing Services, New York Minute, LLC.

### DECISION and ORDER

THOMAS J. McAVOY, Senior District Judge.

## I. FACTS

The parties have not objected to the Magistrate Judge's factual recitation. Accordingly, the Court adopts the facts as stated in the Magistrate Judge's Report and Recommendation, familiarity with which is presumed.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, a district judge may designate a magistrate judge to hear and determine certain pre-trial matters pending before the court. Whether to dismiss or to permit maintenance of a class action is something that a district court may not designate a magistrate judge to hear and determine. 28 U.S.C. § 636(b)(1)(A). A district court may, however, designate a magistrate judge to conduct evidentiary hearings and to submit proposed findings of fact and recommendations for the disposition by the district court of a class action motion. 28 U.S.C. § 636(b)(1)(B). In such situations, where objections are filed to the proposed findings and recommendations, the court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(c). Accordingly, the Court finds that the Report–Recommendation should be reviewed under a de novo standard. *See U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir.1992); *see also* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3068.2 (2d ed.).

In reviewing the Report–Recommendation de novo, the Court is mindful of the standards applicable to motions for class certification. Specifically, "a district judge may not certify a class without making a ruling that each Rule 23 requirement is met ... [and] all ... evidence must be assessed as with any other threshold issue," whether or not any such assessment also bears on the merits of the case. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 221 (2d Cir.2008) (quoting *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 27 (2d Cir.2006)).

Rule 23(a) requires that a class action possess four familiar features: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If those criteria are met, the district court must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b). With respect to class actions for money damages sought under Rule 23(b)(3), the district court must also find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." *McLaughlin*, 522 F.3d at 222 (citing and quoting Fed.R.Civ.P. 23(b)(3)).

## III. DISCUSSION

■ While this Court agrees with the Magistrate Judge's Report and Recommendation on most of the issues addressed therein, in light of the Second Circuit's recent opinion in *McLaughlin* and the significance of the issues of reliance and causation in this case, it disagrees with the Magistrate Judge's Rule 23(b)(3) analysis. The Court is aware that, as the Magistrate Judge noted, Plaintiffs are not seeking certification of the reliance and/or damages issue. The Court disagrees, however, that those issues are, therefore, rendered irrelevant to the overall Rule 23 analysis, including the issue certification under Rule 23(c)(4)(A). *See McLaughlin*, 522 F.3d at 234; *In re Tetracycline Cases*, 107 F.R.D. 719, 727 (D.Mo.1985) ("[T]he appropriate meaning of Rule 23(b)'s predominance requirement, as applied in the context of a partial class certification request under Rule 23(c)(4)(A), is simply that the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole. In applying this test, the court must obviously consider the nature of the other potential issues in the litigation...."); 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1790 (3d ed.) ("[W]hen the court finds that the noncommon issues are inextricably entangled with the common issues, or that the noncommon issues are too unwieldy or predominant to permit the efficient management of the litigation, it may have to dismiss the action or strike the class allegations.").

In *McLaughlin*, the plaintiffs sued under 18 U.S.C. § 1962(c) (RICO) claiming that they (a group of smokers) were deceived by defendants' marketing and branding into believing that "light" cigarettes were healthier than "full-flavored" cigarettes. *McLaughlin*, 522 F.3d at 220. "The gravamen of plaintiffs' complaint [was] that defendants' implicit representation that Lights were healthier led

them to buy Lights in greater quantity than they otherwise would have and at an artificially high price, resulting in plaintiffs' overpayment for cigarettes." *Id.* The plaintiffs sought class certification.

In assessing whether the claims were appropriate for class certification, the Second Circuit noted the elements of a § 1962(c) claim. These elements include proving: (1) a RICO violation; (2) injury; and (3) transaction and loss causation. The *McLaughlin* Court noted that "the transaction or 'but for' causation element requires the plaintiff to demonstrate that he relied on the defendant's misrepresentation." *McLaughlin,* 522 F.3d at 222. Rejecting the plaintiffs' arguments that reliance could be proven by generalized proof, the Second Circuit stated that "proof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation; the other half, reliance on the misrepresentation, cannot be the subject of general proof. Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative.... [W]e cannot assume that, regardless of whether individual smokers were aware of defendants' misrepresentation, the market at large internalized the misrepresentation to such an extent that all plaintiffs can be said to have relied on it." *Id.* at 223–24. The Circuit, therefore, found that the issue of reliance presented individualized issues that predominated over common issues.

The Circuit then considered the issue of loss causation; that is, whether the plaintiffs could prove that defendants' misrepresentations caused them to suffer economic loss. *Id.* at 226. The Circuit again concluded that the issue of loss causation could not be resolved by way of generalized proof because "individuals may have relied on defendants' misrepresentation to varying degrees in deciding to purchase Lights." *Id.* Turning to the issue of damages, the Second Circuit similarly found that "out-of-pocket losses [which are necessary to a § 1964(c) claim] cannot be shown by common evidence because they constitute an inherently individual inquiry; individual smokers would have incurred different losses depending on what they would have opted to do, but for defen-

dants' misrepresentations." *Id.* at 228. Ultimately, the Second Circuit concluded that the issues of injury and causation defeated the predominance requirement of Rule 23(b)(3). *McLaughlin,* 522 F.3d at 222.

Significantly, in *McLaughlin,* the Second Circuit explicitly addressed the possibility of using Rule 23(c)(4) to certify only certain issues of the plaintiff's claims (rather than the claims as a whole). The Second Circuit concluded that, although "a court may employ Rule 23(c)(4) to certify a class as to common issues that do exist, 'regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement' .... in this case, given the number of questions that would remain for individual adjudication, issue certification would not 'reduce the range of issues in dispute and promote judicial economy.' " *McLaughlin,* 522 F.3d at 234 (quoting *In re Nassau County Strip Search Cases,* 461 F.3d 219, 227 (2d Cir.2006) and *Robinson v. Metro–N. Commuter R.R.,* 267 F.3d 147, 168 (2d Cir.2001) respectively).

This Court believes that the reasoning in *McLaughlin* equally applies to this case. This case is predominantly a fraud case. Plaintiffs assert causes of action under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) (fraud-base RICO claims), and claims for rescission of contract based on fraud, fraud in the inducement, and common law fraud. Plaintiffs also assert claims of unjust enrichment, breach of contract, negligent misrepresentation, negligence, violations of N.Y. General Business Law §§ 349 and 350, and for a fraudulent conveyance. Seven of these causes of action (the RICO claims, the fraud claims, the rescission claims, the negligent misrepresentations claims, and the General Business Law § 350 claims) require proof of reliance, causation and damages. *See McLaughlin,* 522 F.3d at 222 (noting that proof of reliance is necessary in RICO cases); *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) ("In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepre-

sentation or material omission, and injury."); *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585 (2007) ("A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."); *Richards v. Kaskel,* 32 N.Y.2d 524, 536 n. 6, 347 N.Y.S.2d 1, 300 N.E.2d 388 (1973) (noting that, in actions for fraud for damages or rescission, reliance is a predicate to recovery); *Deangelis v. Timberpeg East, Inc.,* 858 N.Y.S.2d 410, 2008 WL 1969676, at *3 (3d Dep't 2008) (noting justifiable reliance is a requirement of a claim under General Business Law § 350). These issues of reliance and causation are the main focus of Plaintiffs claims and, for the following reasons, the Court finds that the issues of reliance, causation, and damages will predominate over this case and that certification, or issue certification, will not reduce the range of issues in dispute and promote judicial economy. *See e.g. In re Initial Public Offering Securities Litigation,* 471 F.3d 24, 42 (2d Cir.2006) ("The predominance requirement fails initially with respect to the issue of reliance.").

The evidence adduced at the Rule 23 hearing, together with the affidavits submitted by the parties, demonstrates that the parents of Ivy Ridge students had many motives for sending their children to Ivy Ridge. Indeed, it appears that in nearly all, if not all, circumstances there were multiple reasons for sending children to Ivy Ridge. These reasons include, but are not limited to, geographic location, cost, available extracurricular activities, educational programming, character development programs, the ability to earn "credits," the ability to obtain a diploma, etc. *See e.g.* Decl. of Robin Byrne; Decl. of Cindy McCrary. It seems that no parents sent their children to Ivy Ridge solely because of its ability to issue credits or a diploma, but because of Ivy Ridge's claimed ability to deal with troubled or difficult children. *See e.g.* Am. Compl. at ¶ 100; Civil RICO Stmnt. at pp. 2, 13, 21; Ahlstrand Aff. at ¶ 3; Bohnwagner Aff. at ¶ 3; Cornell Aff. at ¶ 4. There is evidence in the record that, to some par-

ents, "[a]ccumulating high school credits and or a diploma was nothing but an 'extra' that was not important to [them] at the time [they] enrolled [their] child[ren]." *See e.g.* Decl. of Robin Byrne; Decl. of Cindy McCrary. Thus, some parents may have opted to send their children to Ivy Ridge regardless of any representations concerning the ability to issue credits or diplomas. There also is evidence suggesting that some parents received no representations concerning the ability or authority to issue credits and/or diplomas. Other distinctions among potential class members include the fact that some students received diplomas from Ivy Ridge, whereas others did not. As in *McLaughlin* and *In re Initial Public Offering Securities Litigation,* this Court finds that individualized proof is needed to overcome the possibility that a member of the purported class sent their children to Ivy Ridge for some reason other than the belief that Ivy Ridge was authorized to issue credits and/or diplomas. *See Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 434 (4th Cir.2003) ("The first reason why common issues do not predominate in Plaintiffs' claims against the Agents is the need for individual inquiry into the issue of reliance.... Indisputably, negligent misrepresentation and fraud require proof of reliance.... Almost inevitably, establishing ... [the] elements [of these claims] requires an individualized inquiry."); *see also Andrews v. AT & T,* 95 F.3d 1014, 1025 (11th Cir.1996) (Decertifying class in part because "the plaintiffs would ... have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages."); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue"). The Court cannot assume that, regardless of whether a particular student's parents were aware of defendants' misrepresentation, the market at large internalized the misrepresentation to such an extent that all plaintiffs can be said to have relied on it. Indeed, the record evidence before the Court suggests the contrary. Further, individuals may have relied on defendants' misrepresentation to varying degrees in deciding to send their children to Ivy Ridge. Given the significance of the

issues of reliance and causation to Plaintiffs' fraud-based and negligent misrepresentation claims and the fact that this inquiry necessarily is personal to each potential class member, the Court finds that these individualized issues are substantially intertwined with the claims as a whole and predominate over any other common issues. *McLaughlin*, 522 F.3d at 234; *Gunnells*, 348 F.3d at 434; *Andrews*, 95 F.3d at 1025; *Castano*, 84 F.3d at 745.

The Court comes to the same result on the issue of damages. The evidence demonstrates that different rates were charged to different students. Out-of-pocket losses cannot be shown by common evidence because they constitute an inherently individual inquiry. Parents would have incurred different losses depending on what they would have opted to do but for defendants' misrepresentations.

The Court finds that severing various elements of Plaintiffs' claims for purposes of class-action adjudication and leaving the remainder for individualized adjudication (i.e. issue certification) would not meaningfully reduce the range of issues in dispute and promote judicial economy and will lead to potential confusion and redundancy in the presentation of proof. As the Second Circuit said in *McLaughlin*, "[c]ertifying, for example, the issue of defendants' scheme to defraud, would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury and damages." 522 F.3d at 234. Most, if not all, of the common issues in this case can be resolved just as expeditiously through joinder.[1] *See Roe v. City of New York*, 151 F.Supp.2d 495, 509 (S.D.N.Y.2001) ("Joinder of appropriate parties is encouraged so that common issues may be addressed in a single action."). Given the overwhelming predominance of these individualized inquiries in this case, the Court finds that class certification is not warranted, either as to the claims as a whole or as to specific elements of Plaintiffs' claims.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED.[2]

IT IS SO ORDERED.

### *REPORT AND RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

Plaintiffs commenced this action on July 25, 2006. (Dkt. No. 1). Plaintiffs allege that Defendants, who are all associated with an institution called the Academy at Ivy Ridge ("Ivy Ridge"), falsely represented Ivy Ridge as a "fully accredited" school capable of awarding transferable credits and diplomas.

In December 2006, Plaintiffs moved to certify two classes: (1) "all parents and/or natural guardians who enrolled their children at Ivy Ridge during the period of November 2001 through August 2005, and whose children were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge between November 2001 and August 2005." (Dkt. No. 57 at 4.) Defendants opposed the motion. (Dkt. Nos. 70 and 73.) Senior United States District Judge Thomas J. McAvoy denied Plaintiffs' motion "without prejudice for renewal after a Rule 23 hearing." (Dkt. No. 108 at ¶ 8.)

On July 25, 2007, Plaintiffs filed the current motion, by which they seek to certify the same two classes proposed in the earlier motion. (Dkt. No. 157 at 4.) Defendants oppose the motion. (Dkt. Nos. 180 and 182[1].)

Magistrate Judge Gustave J. DiBianco conducted an evidentiary hearing on August

---

1. This is particularly so here where, unlike in typical class actions, there is a discrete class of known and readily identifiable plaintiffs.

2. The Magistrate Judge recommended denying class certification as to the unjust enrichment and breach of contract claims. Plaintiffs did not object to this portion of the Report–Recommendation. This Court agrees with the Magistrate Judge's recommendation that the unjust enrich-

ment and breach of contract claims will require individualized proof that outweighs any efficiencies gained by certifying a class with respect to those claims.

1. Defendants Robert B. Lichfield, Patricia Lichfield, Robert Browning Lichfield Family Limited Partnership, R & B Billing, LLC, Optimum Billing Services, LLP and New York Minute, LLC did not file a substantive brief in opposition to

21 and 22, 2007. Proposed class representatives Sandra Wose, Bruce Dungan, Patricia MacRae and Ryan Wose testified. Magistrate Judge DiBianco also heard testimony from Defendants Jason Finlonson (the director of Ivy Ridge) and Robert Lichfield (the founder of the World Wide Association of Specialty Programs and Schools, Inc.[2]), David Steadman (the executive director of Defendant Northwest Association of Accredited Schools), Ivy Ridge employees Ann Morley and Heidi Miller–McGinnis, Josh Dalton (an employee of Defendant Teen Solutions), Sharon Diggans (the parent of an Ivy Ridge student) and Marc Wasserman (the parent of an Ivy Ridge student).

The parties filed post-hearing briefs. (Dkt. Nos. 228–229, 231.)

On November 1, 2007, Judge DiBianco recused himself from the case. (Dkt. No. 241.) The class certification motion was reassigned to me for a Report and Recommendation by Judge McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(a) of the Local Rules of Practice for this Court. I have reviewed the parties' briefs, the transcript of the class certification hearing, the evidence submitted with the parties' briefs and the exhibits admitted at the class certification hearing. The parties appeared before me for further oral argument on January 9, 2008. For the reasons discussed below, I recommend that the motion be granted in part.

## I. Factual and Procedural Summary

Ivy Ridge is a facility for troubled teens. The school was founded by Defendants Jason Finlonson, Alyn Mitchell, and Joseph Mitchell. (Dkt. No. 117 at ¶ 108; Dkt. No. 135 at ¶ 108.) It opened in August 2001 and accepted its first students in November 2001. (Transcript of Class Certification Hearing ("T.") at 92:16–20.) Ivy Ridge marketed itself through the internet, parent referrals, marketing groups such as Defendants Teen Help and Life Lines, and magazines. (T. at 155:5–20.) Ivy Ridge charged tuition ranging from $2,900 to $4,000 per month. (Dkt. No. 135 at ¶ 132; T. at 13, 48, 75; Dkt. No. 156, Nordby Aff. Ex. 3. ¶ 2.)

Shortly after opening, Ivy Ridge began the process of becoming accredited through Defendant Northwest Association of Accredited Schools ("Northwest"). (T. at 93:2–5.) Ivy Ridge employees were instructed to respond in the affirmative when parents asked whether Ivy Ridge was accredited. (T. at 111:8–22.) Beginning in July 2002, Ivy Ridge posted certificates of accreditation on its web site. (T. at 110:7–11; 132:13–17.) Ivy Ridge did not, however, apply to become a registered New York State non-public school[3]. (T. at 96:25–97:3.)

Each of the parents who testified at the class certification hearing stated that they received representations regarding Ivy Ridge's accreditation. These representations were made by Teen Help (T. at 6:4–7, 44:16–18), Help My Teen (73:8–13), Teen Solutions (T. at 343:17–20), the Ivy Ridge website (T. at 7:4–22, 11:16–23, 73:24–74:17), and Ivy Ridge employees (T. at 10:15–11:15, 12:24–13:2, 45:25–46:5).

Problems arose for some students who attempted to transfer their Ivy Ridge credits[4].

the current motion. Rather, they joined in the opposition filed by the other Defendants (Dkt. No. 180) and incorporated Robert B. Lichfield's opposition to Plaintiffs' first certification motion (Dkt. No. 70). (Dkt. No. 182.)

2. "WWASPS" is an association of "specialty boarding schools" designed to rehabilitate troubled teens. Most of the schools are owned by former employees of Defendant Robert B. Lichfield. Ivy Ridge was a member of WWASPS for its first four or five years of existence. (Transcript of Class Certification Hearing at 186–92.)

3. Defendants argue that "Plaintiffs have failed to demonstrate Ivy Ridge was not accredited between 2001 and August 2005. In fact ... (Northwest's) Executive Director ... clearly testified that Ivy Ridge was accredited during that time period ... and that ... Northwest has not retroactively voided Ivy Ridge's accreditation." (Dkt. No. 228 at 8.) As discussed below, the New York State Attorney General issued a finding of fact that Ivy Ridge was never properly accredited by Northwest because Ivy Ridge was not "licensed, certified, or registered in the State of New York," as Northwest requires. (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 7.) Whether Ivy Ridge and its employees reasonably believed that Ivy Ridge was properly accredited is a key issue in this case. As discussed more fully below, partial class certification will allow the Court to resolve this key issue promptly and efficiently.

4. Other students did not encounter any problems transferring their credits. (T. at 336.)

Putative class member Phyllis Hunstein declared that "(a)fter leaving Ivy Ridge, (her nephew) attempted to complete his high school education at a public school in the State of Kentucky. However, the Kentucky State Education Department refused to accept or acknowledge any of the 'credits' that (he) earned at Ivy Ridge. Work that (he) completed at Ivy Ridge had to be re-done before he could graduate from a Kentucky public school." (Dkt. No. 156, Hunstein Decl. ¶ 6.) Putative class member Suzanne J. Hunter declared that, similarly, a Florida high school refused to accept her son's Ivy Ridge credits. (Dkt. No. 156, Hunter Decl. ¶ 4.) Putative class member Dawn M. Bohnwagner declared that after her son left Ivy Ridge "he tried to enlist in the Marine Corps, but he was told that his Ivy Ridge credits were unacceptable, and he was not allowed to enlist." (Dkt. No. 156, Bohnwagner Decl. ¶ 5.)

"In March of 2005, after receiving information that the school was not licensed, certified or registered in the State of New York, (Northwest) suspended Ivy Ridge's candidacy for accreditation." (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 7.)

On August 17, 2005, the New York State Attorney General issued findings of fact that "(b)ecause Ivy Ridge has never been licensed, certificated or registered in New York State, the school never should have been considered for accreditation by (Northwest)." (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 7.) Further, Ivy Ridge, "by stating in its promotional material that it awarded its graduates high school diplomas and that it was accredited by the Northwest Association of Schools and Colleges, violated GBL 349 (deceptive acts and practices) and Section 350 (false advertising)." (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 10.) Under an Assurance of Discontinuance, Ivy Ridge agreed to (1) cease awarding diplomas; (2) cease advertising Ivy Ridge as a diploma-awarding entity; (3) send a letter to the parent or guardian of each enrolled student stating that Ivy Ridge was not registered with the New York State Department of Education, was not currently accredited by any academic accrediting organization, and was not authorized by New York State to grant high school diplomas to its students; (4) make partial tuition refunds to each student who received a diploma; and (5) pay a civil penalty. (Dkt. No. 156, Nordby Aff. Ex. 3 ¶¶ 15–19, 22.)

Plaintiffs filed this lawsuit in July 2006. The operative complaint (Dkt. No. 117) contains thirteen causes of action[5]. The first eight causes of action[6] allege, essentially, that Defendants knowingly falsely represented that Ivy Ridge was accredited to issue credits and diplomas, that Plaintiffs relied on those representations, and that Plaintiffs were damaged as a result. The ninth cause of action alleges that Defendants were negligent. The tenth cause of action alleges that Defendants Academy at Ivy Ridge, Academy at Ivy Ridge, Inc., Jason G. Finlonson Corp., Jason G. Finlonson, Joseph Mitchell, and

---

5. By written order dated September 25, 2007, the Court dismissed causes of action for negligence, negligent misrepresentation, and violations of New York Debtor and Creditor § 273a as to Defendants R & B Billings, LLC, Patricia Lichfield and the Robert Browning Lichfield Family Limited Partnership. (Dkt. No. 226 at 2.) The Court also dismissed General Business Law §§ 349 and 350 claims as to Defendant Robert Browning Lichfield Family Limited Partnership. Id.

6. The first and second causes of action are for RICO violations and are brought only by the proposed parent sub-class. The first cause of action is alleged against the Academy at Ivy Ridge, the Academy at Ivy Ridge, Inc., the Jason G. Finlonson Corporation, the Joseph & Alyn Mitchell Corporation, WWASPS, Jason Finlonson, and Joseph Mitchell. The second RICO cause of action is against all Defendants. The third cause of action for rescission, the fourth cause of action for fraud and the fifth cause of action for fraud in the inducement are brought by all Plaintiffs against the Academy at Ivy Ridge, the Academy at Ivy Ridge, Inc., the Jason G. Finlonson Corporation, the Joseph & Alyn Mitchell Corporation, WWASPS, Jason Finlonson, Joseph Mitchell, Northwest Association of Schools & Colleges & Universities, Inc., Northwest Association of Accredited Schools, Inc., Lifelines Family Services, Inc. d/b/a Teen Life Lines, Teen Solutions, LLC, and Teen Help, LLC. The sixth cause of action for unjust enrichment is brought by all Plaintiffs against all Defendants. The seventh cause of action for negligent misrepresentation and the eighth cause of action for violations of New York General Business Law §§ 349 and 350 are brought by all Plaintiffs against all Defendants except for Patricia Lichfield and New York Minute, LLC.

Alyn Mitchell breached contracts with Plaintiffs. The final three causes of action allege that the Lichfield Defendants wrongfully conveyed title to the Ivy Ridge property to Defendant New York Minute after this lawsuit was filed in order to hinder Plaintiffs' ability to collect a judgment.

## II. Discussion

### A. The Motion

Plaintiffs move to certify two classes: (1) "all parents and/or natural guardians who enrolled their children at Ivy Ridge during the period of November 2001 through August 2005, and whose children were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who were awarded 'high school' diplomas and/or 'credits' toward high school diplomas at Ivy Ridge between November 2001 and August 2005." (Dkt. No. 57 at 4.)

### B. The Issues

Although Plaintiffs initially sought class certification of each element of each of their causes of action, they clarified in their post-hearing brief that they seek certification of "all core liability issues (*i.e. excluding* reliance and damages)[7]." (Dkt. No. 231 at 1)(emphasis in original). Thus, as a threshold matter, the Court must address whether Plaintiffs may properly move to certify certain elements of their causes of action. If partial certification is available in the form Plaintiffs request, the Court will then "ascertain whether the class satisfies the factors set forth in Federal Rule of Civil Procedure 23(a), commonly referred to as the numerosity, commonality, typicality, and adequacy factors." *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. 265, 270 (S.D.N.Y.2007) (citations omitted). In mak-

ing this determination, the Court must assess all of the evidence and find that each requirement is met; a lesser standard such as "some showing" will not suffice. *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 27 (2d Cir.2006). "If each 23(a) factor is met, then the [C]ourt must determine whether class certification is appropriate under one of the provisions set out in Federal Rule of Civil Procedure 23(b)." *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. at 270. Plaintiffs here seek certification under Rule 23(b)(3). (Dkt. No. 231 at 14; T. at 3:18–22.) Under Rule 23(b)(3), class certification is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). "Plaintiffs bear the burden of showing that the proposed class satisfies Rule 23." *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. at 270.

#### 1. Under Second Circuit Precedent, A Court May Limit Certification to Certain Elements of Claims.

Defendants argue in their post-hearing brief that Plaintiffs' request that the Court "certify certain elements of Plaintiffs' ... claims" is "novel and unsupported." (Dkt. No. 228 at 18–19.)

Plaintiffs' request is not "novel and unsupported." Under Federal Rule of Civil Procedure 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues." "District courts should 'take full advantage of this provision' to certify separate issues 'in order to reduce the range of disputed issues in complex litigation' and achieve judicial efficiencies." *Robinson v. Metro–North Commuter Railroad Co.*, 267 F.3d 147, 167 (2d Cir.2001) (quoting *Cent.*

---

7. Defendants have addressed at length the proposed parent class' motives for sending students to Ivy Ridge. Defendants argue, essentially, that the parents did not rely on the alleged misrepresentations because the parents had reasons other than accreditation for sending their children to Ivy Ridge. (Dkt. No. 228 at 10–14.) Defendants submitted 16 nearly identical affidavits from Ivy Ridge parents, each of whom declared that "[a]ccumulating high school credits or a diploma was nothing but an 'extra' that was not important to me at the time I enrolled my child." (Dkt. No.

180.) Defendants' cross-examination of each proposed parent class representative fixated on the details of each child's behavioral problems (T. at 15–18, 23–25, 50–52, 54–56, 62–64, 81–83, 85–87), apparently in an attempt to establish that parents with such severely troubled teens were not actually motivated by promises of accreditation when they chose Ivy Ridge. Because Plaintiffs have excluded reliance from the scope of the proposed class issues, Defendants' argument is not relevant.

*Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993)).

Defendants argue, at length, that partial certification is not possible here because Plaintiffs' claims, as a whole, do not satisfy the commonality, typicality and predominance factors due to individual questions of reliance and damages. There is a split in the federal circuits regarding the application of Rule 23(c)(4) in proposed Rule 23(b)(3) class actions. Defendants' position reflects the Fifth Circuit's approach, under which each cause of action asserted by a plaintiff must, *as a whole*, satisfy Rule 23(b)(3)'s requirements before the Circuit will certify particular issues. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir.1996). Conversely, the Ninth Circuit allows certification of particular issues even if the cause of action as a whole does not satisfy Rule 23(b)(3). *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). In 2006, the Second Circuit explicitly rejected the Fifth Circuit's interpretation and adopted the practice of the Ninth Circuit. The Second Circuit held that "a court may employ Rule 23(c)(4)(A) to certify a class as to an issue regardless of whether the claim as a whole satisfies" Rule 23. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 221 (2d Cir.2006).

Defendants argue that courts applying *Nassau County* have allowed only one variety of partial certification: the certification of liability, "leaving individual issues of damages to be addressed at a later date." (Dkt. No. 228 at 18.) However, the *Nassau County* court did not limit its holding in the manner suggested by Defendants. Rather, the Second Circuit issued a broad holding, stating that "a court may ... certify a class as to an *issue*." *Nassau County*, 461 F.3d at 221 (emphasis added). Moreover in a subsequent case the Second Circuit, in dicta, explicitly endorsed the certification of "certain elements" of a claim. *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir.2007).

In *Cordes*, the plaintiffs sought certification of a class in an antitrust lawsuit. The District Court denied the motion, in part because it found that individual issues predominated over common issues. The Second Circuit remanded the case to the District Court. The Circuit Court noted that there are three elements of an antitrust claim: (1) a violation of antitrust law; (2) injury and causation; and (3) damages. The second element requires two distinct inquiries: (a) whether the plaintiff has suffered harm; and (b) whether that injury was of the type that the antitrust laws were intended to prevent. According to the court, only the first element and the second part of the second element were definitely common to the class. The Second Circuit directed the District Court to determine whether there was a method of calculating the plaintiffs' harm, i.e., the first part of the second element, that would also be common to the class. If such a method was not available, the Second Circuit stated that the plaintiffs could "seek certification of a class to litigate the first element of their antitrust claim-the existence of a Sherman Act violation-pursuant to Rule 23(c)(4)(A) and *Nassau County*." *Cordes*, 502 F.3d at 109. The Second Circuit's advice that the plaintiffs seek class certification of a single element of their claim strongly suggests that Plaintiffs' request here is not "novel and unsupported."

The Second Circuit's most recent reference to partial certification was in the case of *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir.2008). In *McLaughlin*, smokers sued several cigarette companies under RICO, claiming that the defendants' marketing and branding deceived the plaintiffs into believing that "light" cigarettes were healthier than "full-flavored" cigarettes. Most smokers who smoke "Lights" obtain just as much tar and nicotine as they would if they smoked full-flavored cigarettes by "compensating," which involves either inhaling more smoke per cigarette or by buying more cigarettes. The District Court granted the plaintiffs' motion for class certification. The Second Circuit reversed the District Court's full certification order, finding that individual issues predominated over common issues. In *dicta*, the Second Circuit stated that:

> We recognize that a court may employ Rule 23(c)(4) to certify a class as to common issues that *do* exist, "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *In re Nassau County Strip Search Cases*, 461

F.3d [at] 227. Nevertheless, in this case, given the number of questions that would remain for individual adjudication, issue certification would not "reduce the range of issues in dispute and promote judicial economy."

*McLaughlin,* 522 F.3d at 234 (quoting *Robinson,* 267 F.3d at 168). Thus, although the Second Circuit, in *dicta,* rejected a request for partial certification, it did so not because partial certification is "novel and unsupported" but because partial certification would not have promoted judicial economy in that particular case.

*Maneely v. City of Newburgh,* 208 F.R.D. 69 (S.D.N.Y.2002), provides a good illustration of partial certification promoting judicial economy. In that case, the plaintiff challenged the strip-search policies in place at the City of Newburgh's police station. The policy did not distinguish between persons charged with serious offenses and those charged with lesser offenses and did not require officers to consider whether there was reasonable suspicion to believe that a particular detainee was carrying a weapon or contraband. The plaintiff sought certification of a "class of persons who were strip searched before arraignment, and in the absence of reasonable suspicion to believe that they were carrying or concealing weapons or contraband." *Maneely,* 208 F.R.D. at 70. The court noted that individual issues had the potential to predominate because there would have to be an individualized determination—i.e. whether there was reasonable suspicion to believe that the person was carrying or concealing weapons or contraband—before even determining whether a person was a class member or not. But, the court noted:

> it would be improper to let manageability concerns overwhelm the predominance decision. There is a common issue at the core of this case—whether defendants maintained an unconstitutional blanket strip search policy ... Since defendants contest that they maintained an unconstitutional strip search policy ... judicial efficiency will be served by deciding this issue on a class-wide basis, once and for all. If the class prevails on these issues, then individual plaintiffs can come forward to litigate, in individual suits, the issue of

whether their rights were violated and whether they suffered damages.

*Id.* at 78–79. The court therefore certified a partial class "as to the issue of whether the City of Newburgh maintained a policy of strip searching all pre-arraignment prisoners, with or without having a reasonable suspicion to believe that these persons were carrying or concealing weapons or contraband." *Id.*

Here, as in *Maneely,* there is "a common issue at the core" of the case: whether Defendants misrepresented that Ivy Ridge was an accredited institution capable of issuing valid credits and diplomas. Just as the defendants in *Maneely* contested that they maintained an illegal policy, Defendants here contest that they misrepresented Ivy Ridge's accreditation status. Rather, they allege that Ivy Ridge was, in fact, accredited by Northwest and capable of issuing valid credits and diplomas. As the parties acknowledged in oral argument before me, if this issue is resolved in Defendants' favor, there would not be the need for further litigation. Partial certification would thus promote judicial economy. Accordingly, Plaintiffs may properly move to certify the non-reliance and non-damages elements of their claims. Those elements are:

1. RICO
   a. engagement in interstate commerce or activities that affect interstate commerce
   b. pattern of racketeering activity
   c. conspiracy. 18 U.S.C. § 1962(c) and (d) (2000); *De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001).

2. Rescission, fraud, fraud in the inducement
   a. a representation made by Defendants
   b. of material fact
   c. that was false when made
   d. and known by Defendants to be false
   e. for the purpose of inducing reliance upon it. *Perez v. Hempstead Motor Sales, Ltd.,* 6 Misc.2d 374,[173 Misc.2d 710, 662], 163 N.Y.S.2d 184, 188 (Dist.Ct.1997); *Congress Financial Corp. v. John Morrell & Co.,* 790

F.Supp. 459, 469 (S.D.N.Y.1992); *Champion Home Builders Co. v. ADT Sec. Services, Inc.*, 179 F.Supp.2d 16, 24 (N.D.N.Y.2001) (Hurd, J.).

3. Unjust enrichment
   a. Defendants benefitted
   b. at Plaintiffs' expense
   c. equity and good conscience require restitution. *Cargill, Inc. v. Sears Petroleum & Transport Co[rp].*, 388 F.Supp.2d 37, 69 (N.D.N.Y.2005)(Peebles, Mag. J.).

4. Negligent misrepresentation
   a. carelessness in imparting words
   b. upon which others are expected to rely. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir.2003).

5. General Business Law §§ 349 and 350
   a. acts or practices that are consumer-oriented
   b. that are deceptive or misleading in a material way. *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d 434, 438 (S.D.N.Y.2004).

6. Negligence
   a. a duty owed by Defendants to Plaintiffs
   b breach thereof. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir.2006).

7. Breach of Contract
   a. existence of an agreement
   b. adequate performance of the contract by Plaintiffs
   c. breach of contract by Defendants. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996).

8. Fraudulent conveyance in violation of New York Debtor and Creditor Law § 276
   a. a conveyance
   b. made with intent to hinder, delay, or defraud either present or future creditors. NY Debtor & Creditor Law § 276 (McKinney 2001).

9. Fraudulent conveyance in violation of New York Debtor and Creditor Law §§ 273 and 273-a
   a. a conveyance
   b. without fair consideration
   c. rendering Defendants insolvent. NY Debtor & Creditor Law §§ 273 and 273-a (McKinney 2001).

Having determined that the type of partial certification that Plaintiffs seek is possible under the law of this Circuit, the Court will next address whether the proposed partial class satisfies the requirements of Rule 23.

## 2. Plaintiffs Have Established the Rule 23(a) Factors

### (a) Plaintiffs Have Established Numerosity.

In order to qualify for class certification, Plaintiffs must show[8] that the proposed class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). This is referred to as the "numerosity" requirement. Joinder must merely be impracticable, rather than impossible, to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). In the Second Circuit, numerosity is presumed if the proposed class has 40 or more members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).

Plaintiffs have raised a presumption of numerosity as to both proposed classes. Regarding the student class, Defendant Jason Finlonson testified that "roughly 1,600 students" attended the Academy at Ivy Ridge between November 2001 and August 2005 (T. at 131: 12–15) and that Ivy Ridge issued approximately 127 diplomas to students during that time period. (T. at 133: 7–15.) Because each of the 1,600 students presumably has at least one parent or guardian, the proposed parent class is at least as large as the proposed student class. Plaintiffs submitted affidavits from 41[9] putative members

---

**8.** As mentioned above, a lesser standard such as "some showing" will not suffice. *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 27 (2d Cir.2006).

**9.** Plaintiffs also submitted an affidavit from Raquel Speetzen, who is not a member of the proposed parent class because her son attended Ivy Ridge in late April 2006, which is after the class period of November 2001–August 2005. (Dkt. No. 156, Pt. 44.)

of the parent class. (Dkt. No. 156.) Thus, Plaintiffs have raised a presumption of numerosity.

In addition to sheer numbers, a court should also consider any "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, . . . requests for prospective injunctive relief (that) would involve future class members . . . the amount of each member's individual claim, knowledge of the names and existence of the potential class members, and whether potential class members have already joined other actions." *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 120 (S.D.N.Y.2001) (citations omitted)[10].

The majority of these other factors also weigh in favor of Plaintiffs. First, although issue certification will not allow the court to avoid a multiplicity of *actions*, the judicial economy that will result from avoiding repeated airings of the evidence regarding the issues other than reliance and damages cannot be overstated. As discussed above, partial certification will allow the Court to reach the key issues quickly and efficiently.

Second, the evidence shows that members of the proposed parent class are widely dispersed geographically. In evidence are affidavits by persons from 22 different states spread across the country from the Northeast (Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania) to the South (Florida, Georgia, Kentucky, Maryland, North Carolina, South Carolina, Virginia, West Virginia) to the Midwest (Illinois, Iowa, Michigan, Ohio) to the West (California, Colorado, Nevada, Texas). (Dkt. Nos. 156, 180.) Thus, "the impracticability of joinder is substantial because the (putative plaintiffs) are scattered throughout" the nation. *Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y.1981); *In re Medical X-ray Film Antitrust Litig.*, No. CV–93–5904, 1997 WL 33320580, at *3 (E.D.N.Y. Dec.26, 1997) (finding joinder impracticable where pro-

posed class members were "geographically dispersed across the country").

Third, the vast majority of the proposed parent class members whose affidavits are in evidence do not have the financial resources to pursue their claims individually. All but three of the proposed parent class members who filed affidavits in support of the class certification motion declared either that they could not afford to hire an attorney to pursue their claims or that doing so would be cost-prohibitive. (Dkt. No. 156.) This also speaks to their ability to institute separate suits. There is no evidence before the Court that any of the members of the proposed classes have instituted individual actions[11].

The factor considering the amount of each claimant's claim is either neutral or weighs slightly against class certification. Each potential class member's claim, of course, varies depending on how long the student attended Ivy Ridge. Tuition at Ivy Ridge ranged from $2,900 to $4,000 per month. The members of the proposed parent class who filed affidavits in support of the class certification motion spent between $8,000 and $70,000 to send their children to Ivy Ridge. (Dkt. No. 156.) The New York Attorney General implicitly estimated that 15% of each tuition dollar represented the value of accreditation as opposed to the value of Ivy Ridge's other programs. (Dkt. No. 156, Nordby Aff. Ex. 3 ¶ 21.) Using this formula, and based upon the filed affidavits, the class members' claims range from approximately $1,200 to $10,500. This falls between amounts that other courts have held to weigh in favor of class certification and amounts that other courts have held to weigh against class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, (W.D.N.Y.2005) (finding no incentive for an individual to bring suit where recovery for one third of the class was below $1000); *Barnes v. United States*, 68 Fed.Cl. 492, 500 (Fed.Cl.2005) (no incentive for individual to bring suit where recovery is in the hundreds of dollars); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620 (6th Cir.2005)

---

**10.** Neither Plaintiffs nor Defendants explicitly addressed these factors in their briefs.

**11.** Another action against Ivy Ridge is pending in the District of Utah, but it raises different issues than those involved in this case. *See Academy at Ivy Ridge v. Lexington Ins. Co.*, Northern District of New York Case No. 7:07–CV–1101 (Dkt. No. 7.)

(no incentive for individual to bring suit where recovery is $60); *Ansari v. New York University,* 179 F.R.D. 112, 115–116 (S.D.N.Y.1998) (finding that potential award of approximately $90,000 "is hardly the type of de minimis recovery that would discourage individual class members from joining [plaintiff's] lawsuit").

As noted above, the key to the numerosity factor is whether joinder is impracticable. The only argument Defendants advance on the subject of numerosity is that joinder is practicable because "Plaintiffs already know the names and addresses ... of each and every family that sent their children to Ivy Ridge between November 2001 and August 2005 as a result of pre-hearing discovery." (Dkt. No. 228 at 4–5.) Plaintiffs respond that "(w)hile Defendants were directed by the Court to divulge a list of last-known addresses for parents of former Ivy Ridge students, many of those addresses are no longer current." (Dkt. No. 231 at 12.) As noted above, joinder must be "impracticable" rather than "impossible" in order to satisfy the numerosity requirement. Knowledge of the whereabouts of proposed class members does not automatically make joinder practicable. *See Shankroff ˆ v. Advest, Inc.,* 112 F.R.D. 190, 192 (S.D.N.Y.1986). Although courts have denied class certification on the basis that plaintiffs knew the names and addresses of each potential class member, the proposed classes in those cases were much smaller than the 1,600 potential members of each proposed class here. *See Giullari v. Niagara Falls Memorial Medical Center,* 1997 WL 65862, No. 96–CV–0271E (H), at *3 (W.D.N.Y. Feb. 5, 1997)(holding that joinder was practicable because plaintiffs had addresses to contact the 45 potential class members, nearly all of whom resided in the Western District of New York); *Moore v. Trippe,* 743 F.Supp. 201, 211 (S.D.N.Y.1990)(holding that joinder was practicable where the plaintiffs' counsel knew the names of all 54 members and the members resided in the same geographic area); *Block*

*v. First Blood Associates,* 691 F.Supp. 685, 695 (S.D.N.Y.1988)(ruling that joinder was practicable where the plaintiffs knew the names and addresses of all 57 members of the proposed class). Thus, Plaintiffs' possession of last-known addresses for the more than 1,600 members of the proposed parent class, who are widely dispersed geographically, does not render joinder practicable.

Plaintiffs have raised a presumption of numerosity as to both proposed classes. The majority of the other numerosity factors also weigh in favor of finding numerosity. Therefore, Plaintiffs have established numerosity.

**(b) Plaintiffs Have Established Commonality.**

In order to be eligible for class certification, Plaintiffs must show that there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This requirement "is usually a minimal burden for a party to shoulder in large part because it does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 81 (E.D.N.Y.2007) (citations and punctuation omitted).

Here, there are questions of law *and* fact common to the classes. Defendants allegedly took actions—posting false certificates of accreditation on the Ivy Ridge web site, instructing Ivy Ridge employees to inform all parents who inquired that the school was accredited, issuing transcripts that indicated that the school was accredited-that affected each member of the proposed classes. The question of whether these factual allegations are true and, if so, what legal effect they had, is common to the members of the classes. Therefore, Plaintiffs have established commonality[12].

12. Defendants' only argument against a finding of commonality is that different Defendants made the alleged misrepresentations to different Plaintiffs. (Dkt. No. 70 at 13; Dkt. No. 228 at 5–6.) The undersigned notes that commonality might be a closer question if the evidence showed that Defendants made only isolated representations regarding accreditation, diplomas and credits. However, the evidence currently before the Court shows that Defendants had a policy of presenting Ivy Ridge as an accredited institution capable of issuing valid diplomas and credits.

**(c) Plaintiffs Have Established Typicality.**

In order to be eligible for class certification, Plaintiffs must show that "the claims ... of the representative parties are typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). "Typicality ... requires that the claims of the class representatives be typical of those of the class and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997). As the Second Circuit has noted, the "commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis" of each. *Id.*

Here, as noted above, the class members' claims arise from the same course of events-Ivy Ridge's alleged actions in portraying itself as an accredited institution. Although, as Defendants argue, individual members' claims may vary somewhat—some students received credits, others diplomas—each will make similar legal arguments to prove Defendants' liability. Therefore, Plaintiffs have established typicality.

**(d) Plaintiffs Have Demonstrated Adequacy.**

In order to maintain a class action, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

Defendants did not, in any of their briefs, explicitly dispute that the proposed class representatives and their attorneys will fairly and adequately protect the interests of the class [13]. At oral argument before me, Defendants argued that the proposed parent class representatives cannot adequately represent the proposed class because they had not been in contact with all of the named Defendants.

Defendants' argument is without merit. "In determining whether the representative parties will fairly and adequately protect the

interests of the class, a district court must determine whether plaintiff's interests are antagonistic to the interest of other members of the class." *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.* 504 F.3d 229, 245 (2d Cir.2007) (citations omitted). Nothing in the evidence before the Court indicates that the proposed class representatives have interests antagonistic to the rest of the class. The fact that each of the proposed class representatives did not deal, personally, with each of the named Defendants is irrelevant. Indeed, the fact that each of the proposed class representatives allegedly received similar representations regarding accreditation, diplomas and credits despite dealing with different Defendants illustrates the commonality and typicality of the Plaintiffs' claims. Therefore, Plaintiffs have established adequacy.

**3. Plaintiffs Have Established the Rule 23(b)(3) Factors**

**(a) Plaintiffs Have Established Predomination As To All Non–Reliance and Non–Damage Elements With the Exception of Unjust Enrichment and Breach of Contract.**

Having established that they meet the prerequisites of Rule 23(a), Plaintiffs must satisfy one of the categories of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3). (Dkt. No. 228 at 4; Dkt. No. 231 at 14; T. at 3:18–22).

In order to certify a class action under Federal Rule of Civil Procedure 23(b)(3), the Court must find, based on the evidence before it, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). "Classwide issues predominate if resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof,

---

13. The only reference to adequacy in any of Defendants' briefs is at the end of a 50-word sentence in the section titled "Plaintiffs Failed to Demonstrate Typicality": "Therefore, because Ms. Wose and Ms. MacRae are subject to different defenses that are unique to their situations as

compared to those Plaintiffs or putative plaintiffs who received diplomas, their claims are not typical of the entire putative class, and adequacy of representation issues are a concern for these reasons as well." (Dkt. No. 228 at 7.)

and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002). Although it is conceptually similar to the commonality and typicality prongs of Rule 23(a), the predomination requirement "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Id.*

Resolution of the majority of the elements listed in Section IIA, above, can be achieved through generalized proof[14]. The evidence shows that Ivy Ridge consistently held itself out to the public as an accredited institution capable of issuing valid credits and diplomas. It did so in a variety of ways, including posting certificates of accreditation on its web site, instructing its employees to respond in the affirmative if asked whether Ivy Ridge was accredited, and issuing diplomas. Proof of individual representations made to individual class members will not be necessary to establish whether this conduct constituted a conspiratorial pattern of racketeering activity (18 U.S.C. § 1962(c) and (d) (2000); *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir.2001)), whether the Defendants' representations were knowingly false and made in order to induce reliance (*Champion Home Builders Co. v. ADT Sec. Services, Inc.*, 179 F.Supp.2d 16, 24 (N.D.N.Y.2001)), whether the representations were consumer-oriented acts that were deceptive or misleading in a material way (*Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d 434, 438 (S.D.N.Y.2004)), whether Defendants breached a duty to Plaintiffs (*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir.2006)), or whether Defendants fraudulently conveyed land in order to avoid paying a potential judgment (N.Y. Debtor and Creditor Law §§ 273, 273a, 276).

However, even the non-reliance and non-damage elements of Plaintiffs' unjust enrichment and breach of contract claims will require individualized proof. Plaintiffs' claims of unjust enrichment will require individualized proof as to each plaintiff's situation and an individualized analysis of "equity" and "good conscience". *Cargill, Inc. v. Sears*

*Petroleum & Transport Corp.*, 388 F.Supp.2d 37, 69 (N.D.N.Y.2005). Plaintiffs' claims for breach of contract will require individualized evidence of each contract and each plaintiff's performance. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996). Accordingly, Plaintiffs have established predomination as to the non-reliance/non-damage elements of each of their claims except for their unjust enrichment and breach of contract claims.

**(b) Plaintiffs Have Established that a Class Action is the Superior Method of Adjudication**

In order to certify a class action under Federal Rule of Civil Procedure 23(b)(3), the Court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The matters pertinent to this finding include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

Here, members of the proposed classes apparently have little interest in individually controlling the prosecution of separate actions. This is indicated by the fact that, as discussed above regarding numerosity, it does not appear that any class members have yet instituted individual actions and many class members cannot afford to do so. Concentration of litigation in this forum is desirable because Ivy Ridge is located in this District. Any difficulties that may be encountered in managing a class action will be balanced by the efficiencies gained by resolving the myriad generalized issues in one action. Moreover, as discussed above, certifying the core issues will allow the Court to resolve those issues more efficiently. Therefore, Plaintiffs have established superiority.

---

**14.** Defendants' arguments against a finding of predomination focus on the fact that Plaintiffs' reliance on the alleged misrepresentations can only be shown through individualized proof. These arguments are not relevant because Plaintiffs do not seek certification of the reliance issue.

## III. Conclusion

In conclusion, I find that the Second Circuit precedent supports the type of partial certification proposed by Plaintiffs and that such certification is appropriate in this case. As required by the Second Circuit's decision in *In re Initial Public Offering Securities Litigation,* 471 F.3d 24 (2d Cir.2006), the undersigned has assessed all of the evidence presented by the parties. On the basis of that evidence, I find that (1) Plaintiffs have carried their burden of showing that the proposed classes satisfy the numerosity, commonality, typicality and adequacy factors; (2) with the exception of the unjust enrichment and breach of contract claims, questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and; (3) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**ACCORDINGLY,** it is hereby

**RECOMMENDED,** that the District Court enter an order certifying classes consisting of (1) all parents and/or natural guardians who enrolled their children at Ivy Ridge during the period of November 2001 through August 2005, and whose children were awarded "high school" diplomas and/or "credits" toward high school diplomas at Ivy Ridge; and (2) all former residents and students of Ivy Ridge who were awarded "high school" diplomas and/or "credits" toward high school diplomas at Ivy Ridge between November 2001 and August 2005 as to the following elements:

1. RICO
   a. engagement in interstate commerce or activities that affect interstate commerce
   b. a pattern of racketeering activity
   c. a conspiracy. 18 U.S.C. § 1962(c) and (d) (2000); *De Falco[DeFalco] v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001).

2. Rescission, fraud, fraud in the inducement
   a. a representation made by Defendants
   b. of material fact
   c. that was false when made
   d. and known by Defendants to be false
   e. for the purpose of inducing reliance upon it. *Perez v. Hempstead Motor Sales, Ltd.,* 6[173] Misc.2d 374[710], 163[662] N.Y.S.2d 184, 188 (Dist.Ct. 1997); *Congress Financial Corp. v. John Morrell & Co.,* 790 F.Supp. 459, 469 (S.D.N.Y.1992); *Champion Home Builders Co. v. ADT Sec. Services, Inc.,* 179 F.Supp.2d 16, 24 (N.D.N.Y.2001) (Hurd, J.).

3. Negligent misrepresentation
   a. carelessness in imparting words
   b. upon which others are expected to rely. *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 788 (2d Cir.2003).

4. General Business Law §§ 349 and 350
   a. acts or practices that are consumer-oriented
   b. that are deceptive or misleading in a material way. *Lava Trading, Inc. v. Hartford Fire Ins. Co.,* 326 F.Supp.2d 434, 438 (S.D.N.Y.2004).

5. Negligence
   a. a duty owed by Defendants to Plaintiffs
   b. a breach thereof. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 286 (2d Cir.2006).

6. Fraudulent conveyance in violation of New York Debtor and Creditor Law § 276
   a. a conveyance
   b. made with intent to hinder, delay, or defraud either present or future creditors. NY Debtor & Creditor Law § 276 (McKinney 2001).

7. Fraudulent conveyance in violation of New York Debtor and Creditor Law §§ 273 and 273-a
   a. a conveyance
   b. without fair consideration
   c. rendering Defendants insolvent. NY Debtor & Creditor Law §§ 273 and 273-a (McKinney 2001).

It is further **RECOMMENDED,** that Hancock & Estabrook, LLP, be appointed counsel for both classes; and it is further

RECOMMENDED, that Bruce Dungan, Patricia Macrae, and Sandra Wose be appointed as class representatives for the parent class; and it is further

RECOMMENDED, that Ryan Wose be appointed as class representative for the student class; and it is further

RECOMMENDED, that within 20 days of the date of any Order adopting this Report and Recommendation, Plaintiffs' counsel shall submit to the Court a proposed notice to prospective members of the plaintiff classes, along with proposed methods of circulating such notice, including the identity of any newspaper or newspapers of general circulation in the areas effected in this litigation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing Report–Recommendation. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT–RECOMMENDATION WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).